**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Raymond V. Gutierrez, | ) | No. CV 10-0117-PHX-RCB (ECV) |
| | ) | |
| Plaintiff, | ) | **ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Corrections Corp. of America, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Raymond V. Gutierrez brought this civil rights action under 42 U.S.C. § 1983 against Corrections Corporation of America (CCA) (Doc. 16).[1] Plaintiff's claim arose during his confinement at the La Palma Correctional Center (LPCC), a CCA facility in Eloy, Arizona (Doc. 16). Plaintiff alleged that Defendant's broadcast of Protestant network programming and failure to make any Catholic network programming available constituted a Fourteenth Amendment equal protection violation (Doc. 16).[2]

Before the Court is Defendant's Motion to Dismiss (Doc. 20). The Court will grant the motion and terminate the action.

---

[1] Upon screening of the First Amended Complaint, the Court dismissed twelve CCA officials and employees as Defendants (Doc. 17).

[2] The Court dismissed Plaintiff's claims alleging violations of the First Amendment and the Religious Land Use and Institutionalized Persons Act and his state-law claims (Doc. 17).

## I. Motion to Dismiss

### A. Defendant's Contentions

Defendant moves for dismissal of Plaintiff's claim on the ground that he failed to exhaust administrative remedies as required under the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) (id.). In support, Defendant submits the affidavit of Assistant Warden Seidl, who explains the grievance process that is provided to California Department of Corrections and Rehabilitation (CDCR) inmates, like Plaintiff, who are housed at LPCC (id. at 2, Ex. A, Seidl Aff. ¶ 4). The grievance process is contained in LPCC Policy 14-101, and it incorporates the time lines and requirements set forth in 15 California Code of Regulations § 3084 (id., Seidl Aff. ¶ 5; Ex. A-1 (Policy 14-101)). The grievance system consists of four levels: (1) the inmate must submit an Informal Resolution Form within 15 days of the incident being grieved; (2) if unsatisfied with the response, the inmate may file a Level One formal grievance with the Grievance Coordinator, who keeps a log of all formal grievances; (3) if not satisfied with the Level One response, the inmate may file a Level Two appeal to the California Out-of-State Correctional Facility (COCF) Appeals Coordinator; and (4) if not satisfied with that response, the inmate may submit a Level Three formal grievance to the COCF Director (id. ¶ 10). Seidl attests that upon arrival at the LPCC, inmates are issued an Inmate Orientation Handbook that summarizes the grievance procedures and they are given a verbal explanation of the procedures during an Orientation Program (id. ¶ 6).

Attached to Seidl's affidavit are copies of grievance documents showing that Plaintiff submitted an informal resolution on June 22, 2010, in which he requested Catholic channel programming (id. ¶ 15; Ex. A-2). On July 2, 2010, Plaintiff filed a Level One formal grievance specifically asking that Eternal Television Word Network, a Catholic network, be aired (id. ¶ 16; Ex. A-3). On August 6, 2010, Grievance Coordinator Williams screened Plaintiff's formal grievance and directed him to contact the Recreation Supervisor (id. ¶ 17; Ex. A-4). In his response, Williams also informed Plaintiff that the cable network Plaintiff requested was not part of the current cable package that the facility subscribed to and that it would have to be requested at the time of cable package negotiations (id. ¶ 18; Ex. A-4).

Seidl avers that there is no record that Plaintiff filed any appeal from this response (id. ¶ 19).

Defendant argues that in addition to failing to complete all levels of the grievance process, Plaintiff's grievance was untimely because it was not filed within 15 days of the incident (id. at 7). Defendant notes that in his First Amended Complaint, Plaintiff alleged that Defendant began airing the Protestant network on or about June 1, 2009, but Plaintiff did not file his grievance on the issue until June 2010 (id.). Defendant further argues that Plaintiff's June 22, 2010 grievance came five months after he initiated this lawsuit and is therefore improper (id.). For these reasons, Defendant maintains that Plaintiff failed to comply with the PLRA exhaustion requirements and moves the Court to dismiss his claim with prejudice (id. at 8).

### B. Plaintiff's Response

The Court issued the Notice required under Wyatt v. Terhune, 315 F.3d 1108, 1120 n. 14 (9th Cir. 2003), which informed Plaintiff of his obligation to respond and the evidence necessary to successfully rebut Defendant's contentions (Doc. 21). This Notice was returned in the mail with a notation that Plaintiff was no longer at the LPCC (Doc. 22). Plaintiff then filed a Notice of Change of Address indicating that he had been transferred to a facility in Tutwiler, Mississippi (Doc. 24). The Wyatt Notice was resent to Plaintiff's new address (Doc. 25), and Plaintiff was granted additional time to file his response (Doc. 28). In his response, Plaintiff states that he did not receive a copy of the Court's Notice that had been returned undelivered but that he nonetheless submits his response (Doc. 36).

Plaintiff asserts that while at the LPCC, he never attended an orientation, received an Inmate Handbook, or signed documents indicating that he did (id. at 2). Plaintiff states that LPCC prison officials failed to respond to his grievances (id.). He avers that he filed a informal grievance to CO Meyers as directed, but there was no response or indication that his grievance was deficient (id.). Plaintiff further avers that he submitted a formal grievance to CO Williams, who did not respond timely, and his response told Plaintiff to write to Meyers—who had already failed to respond to Plaintiff (id. at 2-3).

Plaintiff submits that LPCC officials' failure to follow the grievance policy and

respond to grievances in a timely manner prevented him from exhausting his claim (id. at 3). As to the timing of Plaintiff's grievance attempts, Plaintiff explains that this action was originally filed with a group of other inmates and that when his claim was separated, he filed an in forma pauperis application and attempted to grievance his claim; however, LPCC officials prevented exhaustion (id.).

### C. Defendant's Reply

In reply, Defendant maintains that every inmate receives orientation and a copy of the Inmate Handbook (Doc. 37 at 2). Defendant nonetheless notes that Plaintiff transferred to the LPCC from the Florence Correctional Center, another CCA facility that houses CDCR inmates (id.). Defendant states that the grievance procedures for CDCR inmates are the same at all CCA facilities (id. at 2-3). Defendant submits that affidavit of Ruth Williams, Grievance Coordinator, who states that Plaintiff was housed at the Florence facility for three years, and he acknowledged receipt of the Inmate Handbook by signing the "Receiving & Discharge Checklist" in September 2007 (id., Attach., Williams Aff. ¶¶ 2, 5-7 & Ex. 1). Williams also avers that prior to filing a complaint about religious television programming, Plaintiff filed four informal resolution forms or formal grievance forms relating to various issues, including inmate wages and medical charges (id. ¶ 10 & Ex. 2). Thus, Defendant contends that Plaintiff was familiar with the applicable grievance procedures (id. at 3).

Defendant reiterates that Plaintiff did not appeal his formal grievance after it was screened by Williams and, therefore, he failed to exhaust administrative remedies (id. at 4).

### D. Plaintiff's Supplemental Response

Because Plaintiff indicated that he did not receive the Court's Wyatt Notice before filing his response, the Court permitted additional time for Plaintiff to submit a supplemental response (Doc. 39).

In his supplemental response, Plaintiff repeats that he never received orientation at the LPCC, and he asserts that he did not receive an Inmate Handbook while at the Florence facility (Doc. 40 at 2). Plaintiff submits the same copies that Defendant submitted of his informal resolution, his formal grievance, and William's response/screening of the formal

1 grievances (id., Attachs.). Plaintiff restates that he attempted to grieve his claim; however, Meyers never responded to his grievance (id. at 3). Plaintiff concludes that LPCC officials did not follow grievance procedures and, in fact, CCA has since instituted a new grievance policy and provides copies of grievance forms to inmates because there were so many problems with the old policy (id.).[3]

### E. Defendant's Supplemental Reply

Defendant reargues its claim that Plaintiff previously acknowledged receipt of the Inmate Handbook and he understood the grievance procedures (Doc. 41 at 3-4). Defendant states that the grievance documents that Plaintiff submits fail to show that he took any steps to appeal the response to his formal grievance (id. at 4).

## II. Exhaustion

### A. Legal Standard

Under the PLRA, a prisoner must exhaust available administrative remedies before bringing a federal action. See 42 U.S.C. § 1997e(a); Griffin v. Arpaio, 557 F.3d 1117, 1119 (9th Cir. 2009). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001). A prisoner must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Thus, the defendant bears the burden of raising and proving the absence of exhaustion. Wyatt, 315 F.3d at 1119. Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-

---

[3]Plaintiff also alleges that he has been denied access to the courts because he is not timely receiving court documents and his "priority legal user" requests at his current housing facility are subject to delays (Doc. 40 at 1). Plaintiff's First Amended Complaint did not include an access-to-the-court claim, and Plaintiff was provided additional time to file supplemental briefing on the exhaustion issue. Further, Plaintiff does not allege any actual injury as a result of the alleged delays or denial of access. See Lewis v. Casey, 518 U.S. 343, 351 (1996). Therefore, Plaintiff fails to state an access-to-the-court claim.

20. Further, a court has broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (quotation omitted). If a court finds that the plaintiff failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. Wyatt, 315 F.3d at 1120.

**B.     Analysis**

As stated, Defendant must demonstrate that there were remedies available to Plaintiff. See id. at 1119; see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th Cir. 2005). Defendant submits evidence that the LPCC had established grievance procedures and that Plaintiff used those procedures to complain about various issues (Doc. 20, Ex. A, Seidl Aff. ¶ 5; Doc. 37, Attach., Williams Aff. ¶ 10).

Defendant's evidence demonstrates that Plaintiff completed the first two steps of the grievance process, but failed to file a Level Two appeal (Doc. 20, Ex. A, Seidl Aff. ¶ 19). In his First Amended Complaint, Plaintiff indicated that he submitted a request for administrative relief and appealed it to the highest level (Doc. 16). But in his response and supplemental response, Plaintiff makes no claim that he filed or that he attempted to file a Level Two appeal after he received William's response to his formal grievance. Plaintiff's general claims that LPCC officials refused to answer grievances and did not follow the grievance procedures are insufficient to overcome Defendant's evidence of an available grievance system.

Defendant's evidence also demonstrates that Plaintiff did not submit his informal resolution and formal grievance related to his claim until after this lawsuit was filed (see Doc. 1, Compl. docketed Jan. 20, 2010). Plaintiff was required to complete administrative remedies before submitting his Complaint to federal court. Vaden v. Summerhill, 449 F.3d 1047, 1051 (9th Cir. 2006). Although Plaintiff's amended pleading was filed after he initiated the grievance procedures, his claim concerning religious broadcasting did not arise between the time of the Complaint and First Amended Complaint; he specifically alleged that it arose on or about June 1, 2009 (Doc. 16 at 4).

On the record before the Court, Defendant has met its burden to show that remedies were available to Plaintiff but that he failed to exhaust his claim. Defendant's Motion to Dismiss will therefore be granted, and Plaintiff's First Amended Complaint will be dismissed without prejudice.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion to Dismiss (Doc. 20).

(2) Defendant's Motion to Dismiss (Doc. 20) is **granted**; Plaintiff's claim is dismissed without prejudice for failure to exhaust administrative remedies.

(3) The Clerk of Court must enter judgment of dismissal and terminate the action.

DATED this 18th day of July, 2011.

_____
Robert C. Broomfield
Senior United States District Judge